T.C. Memo. 2009-131

UNITED STATES TAX COURT

CRAIG J. CASEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16436-03L.                    Filed June 9, 2009.

Craig J. Casey, pro se.

<u>Karen Nicholson Sommers</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Pursuant to section 6330(d)(1),[1] petitioner
seeks review of respondent's determination to proceed with a levy
to collect unpaid income tax for petitioner's 1998 taxable year.

--------

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as amended.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in California when he filed the petition.

On November 3, 2002, respondent issued petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to unpaid income taxes for 1998. Petitioner timely submitted a request for a hearing, in which he contended that he was not liable for the tax, that no notice of deficiency had been sent, and that an improper assessment had been made.

Respondent's Appeals Office sent petitioner a letter on June 12, 2003, scheduling a face-to-face conference for July 2, 2003. In the letter, the Appeals officer informed petitioner that she would not consider challenges to the underlying tax liability in connection with petitioner's hearing because she had determined that petitioner had received a notice of deficiency with respect to 1998 and had failed to petition the Tax Court. The Appeals officer further informed petitioner that he would not be allowed to make an audio or stenographic recording of his face-to-face conference.

The Appeals officer examined petitioner's administrative file. According to the Appeals officer's contemporaneous handwritten notes and her entries in the case activity record,

the administrative file contained copies of a notice of deficiency for 1998 dated January 24, 2002, addressed to petitioner at 7107 Broadway, Unit 333, Lemon Grove, California 91945 (the Lemon Grove address) and at P.O. Box 444, Jacumba, California 91934-0444 (the Jacumba address), as well as an original of the notice of deficiency sent to the Jacumba address. The original notice of deficiency addressed to the Jacumba address had its mailing envelope attached, which bore U.S. Postal Service (USPS) markings indicating that it had been returned unclaimed after three notifications were made on January 25, February 8, and February 18, 2002.

Petitioner requested that his conference be postponed, and the Appeals officer rescheduled it for August 4, 2003. Petitioner advised the Appeals officer of the Tax Court Opinion in Keene v. Commissioner, 121 T.C. 8 (2003), and informed the Appeals officer of his intention to bring a court reporter to his conference. The Appeals officer advised petitioner that the Appeals Office was aware of Keene but had not changed its policy and that recording of petitioner's conference would not be permitted.

Petitioner, accompanied by a witness but not a court reporter, appeared for the scheduled conference on August 4, 2003. At the conference, petitioner submitted to the Appeals officer a copy of his Individual Master File (IMF) and a five-

page list of "relevant issues" related to the proposed collection action (agenda). The agenda stated:

Relevant Issues:

I am disputing several material facts in regards to my tax liability, errors on my official transcript, the appropriateness of the determination and collection actions and the 6702 penalty. * * *

Below is why I believe my transcript and the resulting assessment is defective and prejudicial. * * *

The agenda then outlined why petitioner believed the assessment of his 1998 liability was defective and prejudicial. Petitioner contended in the agenda that he should be allowed to challenge the underlying liability. He maintained that he was entitled to do so because of the presence or absence of certain codes in his IMF or because of respondent's failure to provide him with detailed explanations of these codes. Specifically, the agenda stated that an "SCS-1" code on petitioner's IMF indicated that two taxpayers were using the same Social Security number, that a "VAL-1" code indicated that his Social Security number could be "permanently invalid" for the taxpayer using it, that the absence of a "TC 494" code indicated that no notice of deficiency had been issued to petitioner, and that several other codes on petitioner's IMF had similar meanings, all of which petitioner contended made the assessment invalid. Petitioner also argued that he was entitled to record the conference.

Shortly after the conference, petitioner sent several letters to respondent's Appeals Office. Petitioner's letters included written statements, styled as affidavits, executed by petitioner and by the witness petitioner had brought to the conference. The statements reflected petitioner's and the witness's accounts of what had transpired at the conference. Both described the conference in detail and stated that petitioner attempted to raise various points relating to his IMF and the presence or absence of certain code entries thereon, which were substantially identical to the arguments listed in the agenda petitioner submitted at the conference. The Appeals officer also recorded her account of what had occurred at the hearing in her case activity records. The case activity records likewise record that petitioner argued that proper administrative procedures had not been met, that the notice of deficiency was invalid, and that the presence or absence of various codes on his IMF established the foregoing.

The Appeals officer subsequently issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sustaining the proposed levy. The notice of determination reasoned that petitioner's challenge to the underlying liability was not permitted because (1) petitioner failed to claim the notice of deficiency mailed to him at the Jacumba address (described in the

notice of determination as P.O. Box "144"), the notice of deficiency having been returned to the Internal Revenue Service with USPS markings indicating three notifications to petitioner, and (2) there was no indication that the notice of deficiency mailed to petitioner at the Lemon Grove address had been returned, which created a presumption that petitioner received it.  The notice of determination stated that petitioner had asked to record his hearing and was denied permission, that petitioner had raised several points to the effect that the codes on his IMF indicated that his tax was incorrectly assessed, and that the Appeals officer had verified that all assessments were properly made by consulting a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioner's 1998 taxable year.  Finally, the notice of determination stated that the Appeals officer had determined that the proposed levy balanced the interests of efficient collection of taxes with petitioner's legitimate concern that any collection action be no more intrusive than necessary.

Petitioner filed a timely petition seeking review of the determination.

OPINION

Petitioner contends that he should have been permitted to challenge his underlying tax liability for 1998 during his hearing and that respondent's Appeals officer abused her

discretion in determining that the proposed levy should be sustained.

I.   Background

Section 6331(a) authorizes the Secretary to levy upon property and property rights of any person liable for taxes (taxpayer) who fails to pay those taxes after notice and demand for payment is made.  Section 6331(d) provides that the levy authorized by section 6331(a) may be made with respect to any unpaid tax only if the Secretary has given written notice to the taxpayer 30 days before levy.  Section 6330(a) further requires that the notice advise the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a hearing.

If a hearing is requested, the hearing is to be conducted by an officer or employee of the Commissioner's Appeals Office with no prior involvement with respect to the unpaid tax at issue. Sec. 6330(b)(1), (3).  The Appeals officer shall at the hearing obtain verification that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  The taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy".  Sec. 6330(c)(2)(A).  The taxpayer may also raise challenges to the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the

underlying tax liability or did not otherwise have an opportunity to dispute that liability.  Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and shall take into account (1) the verification that the requirements of any applicable law or administrative procedure have been met; (2) the relevant issues raised by the taxpayer; (3) challenges to the underlying tax liability by the taxpayer, where permitted; and (4) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

With respect to determinations made before October 17, 2006,[2] we have jurisdiction to review the Appeals Office's determination where we have jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  Generally, we may consider only those issues that the taxpayer raised during the section 6330 hearing.  See sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002).

_____

[2]Pursuant to the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019, this Court has exclusive jurisdiction to review determinations under sec. 6330, effective for determinations made after the date which is 60 days after the Aug. 17, 2006, date of enactment, or Oct. 16, 2006.

However, the Appeals officer's mandated verification under section 6330(c)(1) that the requirements of any applicable law or administrative procedure have been met is subject to review without regard to a challenge by the taxpayer at the hearing. Hoyle v. Commissioner, 131 T.C. ___ (2008).  Where it is properly at issue, we review the underlying tax liability de novo.  E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not properly at issue, we review the Appeals officer's determination of collection issues for abuse of discretion.  Id. at 182.  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion was arbitrary, capricious, or without sound basis in fact or law. See Trout v. Commissioner, 131 T.C. ___, ___ (2008) (slip op. at 10); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

## II.  Petitioner's Arguments

Petitioner argues that the Appeals officer erred in refusing to allow petitioner to challenge the underlying liability for 1998, including a penalty under section 6702(a), because, petitioner claims, he did not receive a notice of deficiency for 1998.  Petitioner further argues that the Appeals officer abused her discretion by refusing to permit petitioner to record the hearing.  Petitioner also maintains that he raised other issues at the hearing, including spousal defenses, collection alternatives, and interest abatement, which the Appeals officer

improperly failed to consider in her determination.  Finally, petitioner argues that the Appeals officer failed to verify that the requirements of applicable law or administrative procedure were met.

A.    Challenges to the Underlying Tax Liability

Petitioner contends that he should have been permitted to challenge the underlying tax liability for 1998 in connection with the hearing because he did not receive a notice of deficiency for 1998.  Respondent contends that petitioner was precluded under section 6330(c)(2)(B) from challenging the underlying liability because petitioner either received a notice of deficiency or deliberately refused delivery.  The Court's determination of whether a taxpayer has received a notice of deficiency so as to preclude a challenge to the underlying tax liability under section 6330(c)(2)(B) is made "On the preponderance of the evidence".  Sego v. Commissioner, 114 T.C. 604, 611 (2000); see also Figler v. Commissioner, T.C. Memo. 2005-230.

The preclusion of a challenge to the underlying liability pursuant to section 6330(c)(2)(B) generally requires actual receipt of the notice of deficiency by the taxpayer.  See Sego v. Commissioner, supra at 610-611; see also Sapp v. Commissioner, T.C. Memo. 2006-104; Calderone v. Commissioner, T.C. Memo. 2004-240; Tatum v. Commissioner, T.C. Memo. 2003-115.  However, where

the Commissioner produces a certified mail list (USPS Form 3877) recording that a notice of deficiency was sent by certified mail, the presumption of official regularity creates a strong presumption that the notice was mailed and that it was delivered or offered for delivery at the address to which it was sent. In the absence of clear evidence to the contrary, receipt of the notice will be presumed. See Sego v. Commissioner, supra at 611; Zenco Engg. Corp. v. Commissioner, 75 T.C. 318, 323 (1980), affd. without published opinion 673 F.2d 1332 (7th Cir. 1981); see also United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984); United States v. Ahrens, 530 F.2d 781, 784-786 (8th Cir. 1976). The taxpayer's self-serving claim that he did not receive a notice of deficiency, standing alone, is generally insufficient to rebut the presumption of official regularity. See Sego v. Commissioner, supra at 611; Figler v. Commissioner, supra. In addition, a taxpayer cannot defeat actual receipt by deliberately refusing delivery. Sego v. Commissioner, supra at 610-611; Stein v. Commissioner, T.C. Memo. 2004-124; Carey v. Commissioner, T.C. Memo. 2002-209.

At trial respondent offered into evidence a USPS Form 3877 from his records that lists certified mailings of notices of deficiency at the U.S. Post Office in Laguna Niguel, California, on January 24, 2002, including two notices mailed to petitioner for the taxable year 1998, one to the Jacumba address (at P.O.

Box 444) and one to the Lemon Grove address.[3]  Respondent also

offered petitioner's letter of December 18, 2001, to the

Secretary of the Treasury concerning the examination of

petitioner's 1998 return and the examining agent's decision to

issue a notice of deficiency.  Attached to that letter was a

December 14, 2001, letter to petitioner from the examining agent

advising petitioner that a statutory notice of deficiency would

be issued for 1998 and confirming petitioner's request that his

address be changed to the Lemon Grove address.[4]

The Appeals officer who conducted petitioner's hearing

testified that she reviewed petitioner's administrative file for

1998 in connection with his hearing request.  According to the

Appeals officer, the administrative file contained copies of

duplicate notices of deficiency for petitioner's 1998 taxable

year issued on January 24, 2002, one addressed to petitioner at

the Jacumba address and another addressed to petitioner at the

Lemon Grove address.  The original of the notice of deficiency

sent to the Jacumba address was also in the file, having been

---

[3]We deferred ruling on petitioner's objection to the
admission of the certified mail list at trial, allowing the
parties to address the issue further on brief.  Petitioner failed
to file a posttrial brief.  We conclude that the mail list is
admissible under Fed. R. Evid. 803(6) and 902(11).  Petitioner
was given a copy of the mail list (and accompanying declaration)
in advance of trial and had a fair opportunity to challenge them.

[4]The Dec. 14, 2001, letter gave the city in the Lemon Grove
address as San Diego, but the ZIP code was the same as that used
for Lemon Grove.

returned by the USPS as unclaimed.  The envelope with this original contained USPS notations indicating that delivery had been attempted three times, on January 25, February 8, and February 18, 2002.  The foregoing testimony was corroborated by the Appeals officer's handwritten notes made when she reviewed the administrative file and by her typed notations in the case activity record made at about the same time.

Sometime between the issuance of the notice of determination and the trial in this case, respondent lost or misplaced petitioner's administrative file for 1998.[5]  As a consequence, the aforementioned copies and original of the notices of deficiency are not in the record.  Nonetheless, in appropriate circumstances a USPS Form 3877 is sufficient to show that a notice of deficiency was sent and delivered, where the evidence to the contrary is insubstantial.  See United States v. Zolla, supra; Sego v. Commissioner, supra; Figler v. Commissioner, supra.  The Appeals officer's testimony, fully corroborated by contemporaneous notes, persuades us that a notice of deficiency in final form existed.  This evidence distinguishes this case from Pietanza v. Commissioner, 92 T.C. 729 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991), and Butti v.

---

[5]The Appeals officer's handwritten notes and the case activity record pertaining to petitioner's hearing request were part of a "collection due process" file maintained by respondent's Appeals Office that was not a part of petitioner's administrative file that was lost.

Commissioner, T.C. Memo. 2008-82, where the taxpayers'
administrative files had been lost and the Commissioner's
evidence did not establish that notices of deficiency ever
existed.

The evidence that petitioner has adduced in contravention of
the presumption of official regularity is unpersuasive.  He
contends that no notice of deficiency for 1998 was issued to him
because his IMF does not contain the code entry "TC 494", which
indicates that a statutory notice of deficiency has been issued.
The Appeals officer, while acknowledging that a TC 494 entry so
indicates, nonetheless testified that such an entry is not
mandatory and that she rarely sees one.[6]

Petitioner makes much of the fact that the notice of
determination described the Jacumba address as "P.O. Box 141"
when the correct address was "P.O. Box 444".  The Appeals officer
testified that the notice of determination merely had a
typographical error and that the notice of deficiency she
examined contained the correct address.  The documentary evidence
supports the Appeals officer's position.  Her testimony is

---

[6]We note in this regard that the Internal Revenue Manual
(IRM) describes circumstances under which a statutory notice of
deficiency will be issued without entry of code TC 494 on the
taxpayer's transcript of account.  See IRM, pt. 2.4.35.1(4) (Jan.
1, 2009); see also Wiley v. United States, 77 AFTR 2d 640, 96-1
USTC par. 50,089 (S.D. Ohio 1995) (citing instances where notices
of deficiency are issued without entry of a TC 494 code on the
taxpayer's transcript of account), affd. without published
opinion 108 F.3d 1378 (6th Cir. 1997).

corroborated by her contemporaneous notes, which describe the address on the notice of deficiency she examined as "P.O. Box 444", and the USPS Form 3877 records the notice of deficiency as having been mailed to "P.O. Box 444".

Petitioner stipulated that he maintained a post office box as noted at the Jacumba address during the first 6 months of 2002. The USPS Form 3877 records that a notice of deficiency for 1998 was sent to the Jacumba address on January 24, 2002. We further note that petitioner was aware in December 2001 that respondent had decided to issue a notice of deficiency to petitioner for 1998. The Appeals officer's contemporaneous notes of her examination of the now-lost original notice of deficiency, sent to the Jacumba address and returned, record that USPS markings on the envelope indicated notifications to the address on three occasions: January 25, February 8, and February 18, 2002. Petitioner denies receipt, testifying that he was away on a 2-week vacation beginning January 21, 2002. Since a 2-week vacation beginning January 21, 2002, ended on February 4, 2002, petitioner's explanation does not account for the latter two notifications.

We find that petitioner's evidence is insufficient to overcome the presumption of regularity and of delivery arising from the Form 3877, as corroborated by the Appeals officer's contemporaneous notes of the multiple USPS notifications to the

addressee.  Accordingly, the notice of deficiency sent to the Jacumba address is sufficient to preclude petitioner's challenge to the underlying tax liability for 1998 pursuant to section 6330(c)(2)(B).  See Sego v. Commissioner, 114 T.C. 604 (2000); Figler v. Commissioner, T.C. Memo. 2005-230.

A like result arises from the notice of deficiency mailed to the Lemon Grove address.  The USPS Form 3877 in evidence likewise records that a notice of deficiency for 1998 was sent by certified mail to the Lemon Grove address on January 24, 2002. In his testimony, petitioner denied receipt but was evasive concerning when he commenced use of the Lemon Grove address. Petitioner testified that he had not advised respondent of the Lemon Grove address until sometime after the 1998 notice of deficiency had been mailed (in January 2002).  Petitioner's testimony is contradicted by the attachment to his December 18, 2001, letter to the Secretary of the Treasury, which demonstrates that petitioner had advised respondent by that time to use the Lemon Grove address.  Since petitioner's testimony concerning the Lemon Grove address was evasive and at best unreliable, he has failed to overcome the presumption of official regularity and of delivery arising from the USPS Form 3877.  Accordingly, in the alternative, the notice of deficiency sent to the Lemon Grove address is sufficient to preclude petitioner's challenge to the underlying tax liability for 1998 pursuant to section

6330(c)(2)(B).  See <u>Sego v. Commissioner</u>, <u>supra</u>; <u>Figler v. Commissioner</u>, <u>supra</u>.  Therefore, the underlying tax liability is not properly at issue.[7]

B.   <u>Refusal To Permit Petitioner To Record the Hearing</u>

Petitioner contends that the Appeals officer abused her discretion by refusing to permit him to make an audio recording of his conference, contrary to the holding of this Court in <u>Keene v. Commissioner</u>, 121 T.C. 8 (2003).  He argues that the lack of an audio recording of the conference precludes us from determining what issues he raised in connection with his hearing.

A taxpayer is entitled under section 7521(a)(1) to make an audio recording of a conference held as part of his section 6330 hearing.  <u>Keene v. Commissioner</u>, <u>supra</u> at 19.  In <u>Keene</u>, where the taxpayer had refused to continue with the conference when the permission to record was denied, we remanded the case to the Appeals Office because there was no administrative record on which to decide the relevant issues.  However, we have declined to remand cases where the taxpayer participated in the hearing, even though unrecorded, and where all issues the taxpayer raised could be properly decided from the existing record.  <u>Id.</u> at 19-20; <u>Frey v. Commissioner</u>, T.C. Memo. 2004-87; <u>Durrenberger v.</u>

---

[7]In view of this conclusion, we sustain petitioner's objection to the admission of certain pages from the Web site of petitioner's purported insurance business, as this evidence of petitioner's income-producing activities in 1998 is irrelevant.

<u>Commissioner</u>, T.C. Memo. 2004-44; <u>Brashear v. Commissioner</u>, T.C. Memo. 2003-196; <u>Kemper v. Commissioner</u>, T.C. Memo. 2003-195.

Petitioner fully participated in his face-to-face conference, accompanied by a third-party witness. Subsequently, petitioner and his witness each prepared written statements (styled as affidavits) memorializing what transpired at the conference, which were submitted to the Appeals officer and are part of the administrative record. The Appeals officer also made entries in the case activity record to memorialize what took place at the conference. These three roughly contemporaneous written accounts agree in all material aspects regarding what issues were raised. We are satisfied that the available evidence in the administrative record establishes what transpired at the face-to-face conference. It is therefore unnecessary and would be unproductive to remand this case to the Appeals Office. See <u>Frey v. Commissioner</u>, <u>supra</u>; <u>Durrenberger v. Commissioner</u>, <u>supra</u>; <u>Brashear v. Commissioner</u>, <u>supra</u>; <u>Kemper v. Commissioner</u>, <u>supra</u>.

C. <u>Validity of the Assessment of the Underlying Tax Liability</u>

Petitioner contends that the assessment of his 1998 tax liability was invalid, as shown by the presence or absence of certain codes from his IMF. We have already addressed petitioner's contention that the absence of a TC 494 code

indicates that no notice of deficiency had been issued.[8]  With respect to any other aspect of petitioner's challenge to the validity of the assessment, section 6330(c)(1) directs that the hearing officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met, and section 6330(c)(3)(A) provides that the determination shall take this verification into account.  See Hoyle v. Commissioner, 131 T.C. at ___ (slip op. at 8).  Section 6330(c)(1) imposes on the hearing officer the responsibility "to obtain verification that the legal and administrative requirements for a proper assessment * * * have been met."  Clough v. Commissioner, T.C. Memo. 2007-106.

The Appeals officer examined copies and originals of notices of deficiency issued to petitioner that were in the administrative file.  On the basis of the returned original with the USPS markings indicating three notifications to the addressee, she concluded that a notice of deficiency had been mailed to petitioner on January 24, 2002, and that he had refused

---

[8]Petitioner also argued that an "SCS-1" code on his IMF indicated that another taxpayer might be using his Social Security number and that a "VAL-1" code indicated that his Social Security number was invalid.  Petitioner's arguments with respect to these codes, apparently designed to engender doubt that petitioner was the earner of some of the income reported to respondent in connection with petitioner's Social Security number, are more properly characterized as challenges to the underlying tax liability, which we have held are precluded in this proceeding.

to claim it.  Given petitioner's concession that he maintained the Jacumba address post office box at this time, we are satisfied with the Appeals officer's verification of the mailing of the notice of deficiency.  The Appeals officer further consulted a Form 4340 for petitioner's 1998 tax year to verify that petitioner's 1998 tax liability was assessed on June 17, 2002, and that a notice and demand for payment letter was mailed to petitioner within 60 days of assessment.  Petitioner having demonstrated no infirmity in the foregoing, we conclude that the Appeals officer satisfied section 6330(c)(1), including verifying that the assessment of the underlying liability was properly made.

D.   Petitioner's Claim That Other Issues Were Raised at the Hearing

Petitioner contends that he either raised or attempted to raise collection alternatives, a section 66(c) spousal relief claim, and respondent's failure to abate interest under section 6404(g) in connection with his hearing.[9]

On the basis of the administrative record, as supplemented by the testimony at trial, we are not persuaded that petitioner

---

[9]Petitioner's contentions also include claims more properly characterized as challenges to the underlying tax liability, such as a claim that his income for 1998 should be attributed in part to his wife because of California's community property laws.  As previously concluded, petitioner is precluded from challenging the underlying liability pursuant to sec. 6330(c)(2)(B).

raised or attempted to raise these other issues.[10]  Particularly persuasive are the letters sent by petitioner and his witness to the Appeals officer shortly after the conference, which summarized the issues that had been raised.  These contemporaneous written statements lack any reference whatever to the additional issues petitioner claims he attempted to raise at the conference.  Petitioner's contention that both he and his witness forgot to list these additional issues in the written statements is not credible.  The written statements are not only detailed, but they are also consistent with the agenda petitioner gave the Appeals officer at the conference, as well as the Appeals officer's contemporaneous notes of what took place at the conference and her testimony at trial.  Petitioner's testimony at trial with respect to several other matters was often evasive.  He was, as previously noted, evasive regarding when he notified respondent to use the Lemon Grove address, which petitioner understood was an important issue in the case.  Under these

---

[10]On the basis of the agenda and his postconference letters, we find that petitioner did raise a challenge to a frivolous return penalty under sec. 6702 for 1998.  With respect to determinations made before Oct. 17, 2006, we have held that we lack jurisdiction over a sec. 6702 penalty.  See Johnson v. Commissioner, 117 T.C. 204, 208 (2001); Dunbar v. Commissioner, T.C. Memo. 2006-184.  But see Wagenknecht v. United States, 509 F.3d 729 (6th Cir. 2007).  However, petitioner's IMF, which is part of the administrative record, records that the penalty was assessed on Mar. 27, 2000, and paid by virtue of offset on the same day.  The penalty was therefore not a subject of the levy and is not any part of the underlying tax liability at issue in this case.

circumstances, we do not accept petitioner's self-serving testimony that he raised other issues that were not addressed in the notice of determination.

III. Other Requirements

As discussed supra, the Appeals officer verified that the requirements of applicable law and administrative procedure had been met. She further took into account whether the proposed collection action balanced the need for the efficient collection of taxes with the legitimate concern of petitioner that the collection action be no more intrusive that necessary. See sec. 6330(c)(3). Petitioner has identified no specific infirmities in the foregoing not heretofore addressed.

To reflect the foregoing,

Decision will be entered

for respondent.